[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17363
_____

D.C. Docket No. 3:15-cv-00728-HLA-MCR

DENISE BENZ,

Plaintiff-Appellant,

versus

CROWLEY MARITIME CORPORATION,
CROWLEY LOGISTICS, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 27, 2018)

Before JILL PRYOR, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Denise Benz appeals the district court's grant of summary judgment

to Defendants Crowley Maritime Corporation and Crowley Logistics, Inc.

(collectively, "Crowley"). Plaintiff Benz sued her employer Crowley alleging that she was terminated based on age and gender discrimination and in retaliation for exercising her rights under the Family and Medical Leave Act ("FMLA"). She also claimed that Crowley interfered with her FMLA rights. Having the benefit of oral argument and after carefully reviewing the briefs and relevant parts of the record, we affirm the judgment in favor of Crowley as to Benz's age and gender discrimination claims and reverse as to Benz's FMLA retaliation and interference claims.

## I.    FACTUAL BACKGROUND

We recount the facts in the light most favorable to Benz.

### A. Benz's Employment History from 2003-2015

Crowley operates warehouses in the United States and abroad, including facilities in Jacksonville, Florida and San Juan, Puerto Rico. From June 2, 2003 until her termination on February 6, 2015, Denise Benz worked in Crowley's warehouse in Jacksonville, Florida. When Benz was hired, she was the only warehouse employee. Benz later served as a "warehouse supervisor" and an "operations manager."

By the time of her termination in 2015, the Jacksonville operations had grown substantially. Benz had been promoted to warehouse manager in 2014 and was supervising between 20 and 30 employees. Benz's responsibilities included

2

storing, loading, organizing, and transporting customers' shipments from point of origin to point of destination. Benz was often the only female who worked at the Jacksonville warehouse.

## B. Evaluations of Benz's Job Performance

During her time at Crowley, Benz received high marks on her performance reviews. Benz's supervisors consistently told her that she was performing well, typically exceeding Crowley's expectations. Specifically, Benz's supervisors commended her organizational skills and leadership abilities, noting that Benz worked well with others and challenged her subordinates to complete their tasks on time. Benz's supervisors praised her ability to efficiently manage the warehouse's operations while maintaining a clean and safe work environment. Benz also received recognition for her personal productivity and her ability to capably implement change. Crowley management also applauded Benz's efforts in establishing and implementing standard operating procedures for her warehouse.

In February 2014, Benz received her 2013 performance evaluation, the last formal one she received before her termination in February 2015. The evaluation was prepared by Jennifer Morales, who was Benz's direct supervisor and worked alongside Benz in the Jacksonville warehouse. Morales wrote that Benz had "done a great job" and commended her for "striv[ing] to do her utmost in ensuring that all services performed in the warehouse are done so with accuracy and integrity."

3

Morales also wrote that Benz had reduced costs, ensured the safety of her workers, and worked efficiently.

In addition, Benz's supervisors noted her ability to provide a high level of service to Crowley's customers and for helping to grow Crowley's business. As one of Benz's supervisors put it, "[Benz] is all about customer satisfaction," "always go[ing] out of her way to ensure [that] the customers['] expectations are met."

Even after Benz was terminated, several employees of Crowley's customers, Morningstar Freight Forwarding and Coca-Cola, wrote recommendation letters for Benz. One letter described Benz as being "continuously helpful" and "great at managing [customers'] demands" in a "highly skilled" manner. Another letter stated that Benz had "remarkable talents for business, management and communications" making her "a great candidate for any organization." The letter described Benz as meeting "every deadline and challenge with grace and ease" and stated that she had "always been a pleasure to work with." One letter commended Benz for "flawlessly" executing projects, working as a "no nonsense" manager, flexibly accommodating customers' demands, and proactively communicating with Crowley's customers to solve any problems that would arise. The letter concluded with the observation that "[w]hatever you ask [Benz] to do is one more thing that you no longer have to worry about."

4

Benz also received multiple awards for her performance based on recommendations from her superiors.  In July 2011, Benz received an award for "Operational Excellence and Customer Satisfaction."  The award praised Benz for her "quick thinking and proactive approach" after she completed a customer's shipping order on short notice "with a perfect delivery schedule."  In August 2013, Benz received an award for helping to sign a prospective customer by successfully handling a number of test shipments.  The award noted that Benz worked overtime hours, weekends, and even skipped a friend's wedding in order to ensure that Crowley retained the new customer.  In April 2014, Benz received a $5,000 performance bonus.

In general, Benz was well liked by her subordinates, who testified that she was a good boss and treated her employees fairly.  One warehouse worker testified that "working with [Benz] was great," that she "was a great trainer," and that he'd like to go work for her again in the future.

## C. January-May 2014

In October 2013, Ayesha Diaz became General Manager of Crowley Caribbean Logistics.  At the time, Jennifer Morales was still Benz's direct supervisor in the Jacksonville warehouse.  Benz reported directly to Morales, who in turn reported to Diaz.

5

Shortly after Diaz became General Manager, Diaz and Morales began to critique the Jacksonville warehouse's operations and Benz's performance. Diaz's concern was that the Jacksonville warehouse employees lacked focus, did not know how to complete certain tasks, and were making mistakes. In early 2014, Diaz tasked Benz with establishing standardized operating procedures. Diaz was concerned that Benz's management style was more focused on day-to-day operations instead of long-term strategic planning. Morales also became concerned with Benz's leadership style and her aggressive way of communicating with other employees, which made them feel uncomfortable.

In April 2014, Crowley management received complaints that Benz had uttered racial slurs in the workplace. Upon learning of the allegations, Tiffany King, a Human Resources manager at Crowley, interviewed three employees who worked at the Jacksonville warehouse—Timothy Fontaine, Adrian Rainey, and Patrick Wells. King found out that Rainey and Wells did not actually hear Benz use any slur. Rather, they had heard from Fontaine that Benz had uttered a racial slur.

King believed Fontaine's allegations because he was a top performer with no history of disciplinary problems, while Benz's "past behaviors" suggested that it was possible that she had used the slur. King did not elaborate what "past behaviors" led her to this conclusion.

6

On May 22, 2014, Morales and King gave Benz a Final Written Warning ("FWW") concerning the allegations.  Under Crowley's "progressive discipline policy," a FWW can be both (1) Crowley's initial response to a disciplinary infraction and (2) also the final step before termination.  The FWW accused Benz of (1) using "racial slurs in the workplace when making comments about employees," (2) using inappropriate "tone and language" in the warehouse, (3) being on a "mood elevator," and (4) not sufficiently motivating her employees.  The FWW also reminded Benz of the need to maintain a certain level of confidentiality concerning discussions about her subordinates.

Benz was "stunned" when she received the FWW.  Crowley had never disciplined Benz before for any infraction.[1]  No one at Crowley had spoken to Benz about any of the performance issues alleged in the FWW.  When Morales and King gave Benz the FWW, they did not give specific examples of the performance concerns referenced in the FWW.

On June 18, 2014, Benz wrote an email to King (of Human Resources) and Morales (her superior) denying the FWW's allegations.  During a meeting with Morales and King in August 2014, Benz requested that the FWW be removed from her file.  King denied Benz's request.

---

[1]The parties dispute whether this was Benz's first disciplinary incident or whether there had been other disciplinary notices.

**D. Benz's FMLA Leave in July 2014**

In July 2014, Benz's daughter was diagnosed with uterine sarcoma. Crowley management and Benz's subordinates became well aware that Benz's daughter was ill. Benz stated that, because she was close with the warehouse employees, "virtually all of them" knew about her daughter's cancer and asked her about it frequently. In July 2014, Benz took one month of FMLA leave to care for her daughter.

On June 30, 2014, the day before Benz's FMLA leave began, Diaz emailed Morales and King stating that she was "concern[ed] about this FML from [Benz]" and that "we should sit and have a backup plan in place."

**E. June-October 2014**

Starting in June 2014 and continuing through October 2014, Diaz and Morales began to discuss internally Benz's performance. First, while Benz was out on FMLA leave in July 2014, Morales helped supervise the warehouse and sent a note to King in which she observed that some of the issues mentioned in Benz's FWW were still present.

Morales also began to compile complaints from Morningstar and Coca-Cola, who criticized the efficiency and organization of the Jacksonville warehouse. According to Crowley, Benz's superiors received complaints about goods being shipped in the wrong containers, containers being shipped late, shipment

8

paperwork being filled out incorrectly, and containers being shipped without seals (which would allow the customer to reject the shipment). In October 2014, Crowley management also received reports that some of Benz's subordinates were getting into fistfights at work. Though these issues arose from Benz's warehouse, they were never directly attributed to Benz. Still, Diaz and Morales placed at least some of the blame on Benz's leadership and organizational abilities.

The problem for Crowley though is that, from June through October 2014, Diaz and Morales never told Benz of these customer complaints or about Diaz's or Morales's various concerns. Instead, Benz was consistently told that she was "doing a good job in all respects."

After the FWW in May 2014, the only critiques communicated to Benz from June through October 2014 were that she spent too much time operating the forklift when in the warehouse and that she needed to develop standard operating procedures for her subordinates. Benz responded by limiting her use of the forklift—only using it when necessary to meet workload demands and after getting approval from Morales—and drafting standard operating procedures. Benz also implemented changes to the warehouse and conducted training sessions for her subordinates as recommended by Diaz, which quickly led to better results.

9

**F. Layoffs Announced on September 30, 2014**

On September 30, 2014, Crowley issued a company-wide announcement captioned "Crowley Restructuring to Set Company on Path of Sustained Growth and Success," announcing layoffs which were to occur "[o]ver the next several days." The announcement explained that "[u]pper management performed a thorough evaluation of each position and determined those that should be eliminated." The announcement asked the question, "How many employees will be laid off?" with the answer, "[a]bout 50 Stateside and 50 offshore within the liner, logistics and corporate services groups." Under Crowley's layoff policy, business unit leaders document and maintain records of their analysis for selecting employees for layoff, evaluating the employees' "seniority, their performance, and their skill set."

Before the announcement on September 30, 2014, direct supervisor Morales had already announced to Benz and her crew that no Jacksonville warehouse employees were expected to be included in the layoff. In September 2014, Diaz submitted a list of 13 employees in Puerto Rico whom she selected for layoff in October 2014. Diaz did not submit a list of anyone to be laid off in the Jacksonville warehouse.

10

## G. Benz's Termination

On October 28, 2014, almost a month after Crowley made its layoff announcement, Morales emailed Diaz and King about Benz's performance, including operational concerns and complaints from customers.  Morales observed that Benz's subordinates lacked focus and had difficulty completing their tasks.  In a subsequent email, Morales explained to Diaz and King that "Supervision, Communication, Service Failures[,] and Customer Complaints" were all ongoing issues with Benz.

Later that same day, Diaz emailed Francis Larkin, Senior Vice President of Logistics at Crowley Logistics, stating that she was having problems with Benz, citing her lack of managerial skills, lack of supervision, and lack of control.  Diaz recommended that Benz be terminated and noted that "[w]e do have enough to let [Benz] go at this time."

On the morning of October 29, Larkin accepted Diaz's recommendation, but requested that Diaz delay the actual termination until after Christmas "out of compassion for [Benz] and to alleviate any hardships that she would have suffered by being laid off prior to the Christmas holiday season."  Christmas and January came and went with no termination of Benz.

During the week of January 19, 2015, Benz obtained permission from Morales to use a week of her accrued vacation time in order to take care of her ill

11

daughter from January 26 until January 30, 2015 at the M.D. Anderson Cancer Center in Houston, Texas.

Before Benz's vacation leave began, Morales asked Benz if she "planned to take further FMLA leave" in order to care for her daughter. Benz responded that she would need to take FMLA leave again, explaining that her daughter's condition was not improving. After Benz told Morales she would need to take FMLA again, Diaz, King, and Morales immediately emailed one another about the prospect of terminating Benz.

On February 4, 2015, only a few days after returning to work, Benz requested another month of FMLA leave so that she could again care for her daughter from February 9 through March 9, 2015. Benz's FMLA request was approved by Crowley Human Resources that same day. However, after speaking with Crowley Human Resources, Benz emailed Morales the next day (February 5), asking if she could use her accrued vacation time in lieu of FMLA leave to care for her daughter, as she had done the week before. Morales did not respond to Benz's request.

On February 6, 2015—the Friday before Benz was to begin her approved FMLA leave on February 9—Morales and King terminated Benz. Benz was not provided with a letter of termination, but was verbally terminated by Morales and King. In the brief termination meeting, Morales and King told Benz that her

12

position was being eliminated due to "budget cuts," but said nothing as to Benz's job performance.[2]

### H. Procedural History

On June 18, 2015, Benz filed a complaint against Crowley, alleging that Crowley fired her because of her age, gender, and in retaliation for taking FMLA leave.  She also asserted that Crowley had interfered with her rights under the FMLA.  On July 1, 2016, Crowley filed a motion for summary judgment on all of Benz's claims, which the district court granted.[3]  On November 30, 2016, Benz appealed.

## II.    STANDARD OF REVIEW

This Court reviews <u>de novo</u> a district court's grant of summary judgment. <u>Furcron v. Mail Ctrs. Plus, LLC</u>, 843 F.3d 1295, 1303 (11th Cir. 2016).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute exists where a reasonable fact-finder could find by a preponderance of the evidence that the non-moving party is entitled to a verdict.  <u>Kernel Records Oy v. Mosley</u>, 694 F.3d 1294, 1300

---

[2]Back in October 2014, several employees from Crowley's marketing and sales office in Jacksonville, Florida had been terminated pursuant to the layoff.  At that time, no one from the Jacksonville warehouse was terminated as part of the layoffs.

[3]The district court also granted summary judgment on Benz's claims for disability discrimination.  This claim is without merit and warrants no discussion.

(11th Cir. 2012).  In determining whether evidence creates a factual dispute, a court should draw reasonable inferences in favor of the non-moving party.  Id. at 1301.

### III.    BENZ'S FMLA RETALIATION CLAIM

When evaluating a claim of retaliation under the FMLA, in the absence of direct evidence of discrimination on the part of the employer, we apply the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).  Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 798 (11th Cir. 2000).  Under this framework, Benz must first establish a prima facie case of FMLA retaliation.  If she does so, the burden of production then shifts to Crowley to assert a legitimate, nondiscriminatory reason for terminating Benz.  If Crowley produces a legitimate, nondiscriminatory reason, Benz must show that Crowley's proffered reason is false and that the real reason for her termination was her application for FMLA leave.

### A.    Benz's Prima Facie Case

To establish a prima facie case of FMLA retaliation, the plaintiff must show that (1) she engaged in statutorily protected conduct, (2) she suffered a materially adverse employment action, and (3) the adverse action was causally related to the protected conduct.  Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1243 (11th Cir. 2010).

14

Benz established a prima facie case for FMLA retaliation.  Benz engaged in a statutorily protected activity when she applied for FMLA leave and suffered an adverse employment action when she was terminated.  Brungart, 231 F.3d at 798 (stating that a plaintiff engages in a protected activity when she applies for FMLA leave).  Given the close temporal proximity between her application for FMLA leave (on February 4, 2015) and her termination (on February 6, 2015), Benz also satisfied the causal connection element for purposes of a prima facie case.  See Hurlbert v. St. Mary's Health Care Sys., 439 F.3d 1286, 1298 (11th Cir. 2006) (at the prima facie stage, "[c]lose temporal proximity between protected conduct and an adverse employment action is generally sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection" (quotation omitted)); Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010) (concluding that the plaintiff satisfies the causal connection element by showing that the protected activity and adverse action were "not wholly unrelated" (quotation omitted)).

## B.    Crowley's Proffered Reason

Because Benz has made out a prima facie case of FMLA retaliation, the burden shifts to Crowley to articulate a non-discriminatory reason for her termination.  Though King and Morales told Benz that she was fired, Crowley contends that Diaz was the "final decision maker" as to Benz's termination.  Diaz

15

testified that the allegation that Benz had uttered racial slurs in the warehouse was not a factor in her decision to terminate Benz.  Rather, Diaz's position is that she terminated Benz as part of Crowley's "cost reduction effort" and that she selected Benz in light of her poor performance, conduct, and lack of managerial skills.  Diaz was not at the termination meeting but had King and Morales meet with Benz and fire her as part of the cost reduction.  Crowley's stated reason for firing Benz—as part of a cost-reduction and based on Benz's job performance—constitutes a legitimate, non-discriminatory reason.

## C.    Pretext

The burden thus shifts back to Benz to show that this reason is pretextual.  Smith v. BellSouth Telecomms., Inc., 273 F.3d 1303, 1314 (11th Cir. 2001).  That is, Benz must submit evidence demonstrating that Crowley's proffered reason for her termination is false and that the real reason for firing her was her application for FMLA leave.  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993).  After viewing the evidence in the light most favorable to Benz, we conclude that Benz has presented a triable issue as to whether Crowley's proffered reason is pretextual.

To begin with, Crowley's claim that it fired Benz as part of its announced budget cuts is contradicted by the timing and circumstances of Benz's termination.  Crowley announced its layoffs on September 30, 2014, stating that it would be

16

laying off several employees "[o]ver the next several days" in light of "a thorough evaluation" already performed by upper management.  But Diaz did not reach out to Larkin about terminating Benz until October 28, 2014, eventually terminating her in February 2015, nearly four months after Crowley had already implemented its layoffs by terminating approximately 100 employees.  Indeed, when Crowley announced its cost-reduction effort on September 30, 2014, Morales told the Jacksonville warehouse employees that none of them would be terminated as part of the budget initiative.

Crowley attempts to explain this delay with Larkin's affidavit, in which Larkin testified that he asked Diaz to wait until after Christmas to terminate Benz. But then after Christmas and even in January 2015, Benz was not terminated. Rather, Benz was terminated in February 2015, only immediately after she had requested 28 days of additional FMLA leave.

Furthermore, although Crowley told Benz in February 2015 that she was terminated only due to budget cuts, Crowley now contends that Benz was actually selected because of poor performance.  According to Benz's version of the evidence, her stellar career history at Crowley belies that claim, too.  For nearly twelve years, Benz's superiors consistently gave her positive performance reviews. Benz received several awards during her career, recognizing her for her strong leadership abilities and active role in growing Crowley's business.  Benz also

17

received a $5,000 performance bonus in April 2014—which is, oddly enough, around the time Morales and Diaz allege that they became concerned with Benz's performance.

Further, under Benz's version of the events, prior to the FWW in May 2014, she had never been disciplined by Crowley or told by her superiors that she was doing anything less than an admirable job. Then, after Benz was given the FWW in May 2014, Crowley during the next eight months (June 2014 to February 2015) never notified Benz of any further performance issues or disciplinary infractions. Given the evidence as a whole, a reasonable jury could find that Crowley began papering its files with criticisms of Benz but without giving Benz any notice of these criticisms. In fact, when Benz asked Morales and King during her termination meeting why she was being terminated, Morales and King still made no mention of Benz's job performance and told Benz that the reason was budget cuts.

Given the totality of the evidence, a reasonable jury could conclude that the real reason why Crowley terminated Benz on February 6 was her February 4 request for 28 days more of FMLA leave. For example, there is some evidence suggesting that Diaz, at the very least, was displeased with Benz for already taking a month of FMLA leave back in July 2014, and may even have been considering terminating her because of it. When King in Human Resources informed Diaz

18

through email that Benz was taking nearly a month of FMLA leave in July 2014, Diaz replied, "I'm concern[ed] about this FML from [Benz]" and that Benz's superiors needed to "sit and have a backup plan in place."  While Diaz's email could be construed as simply stating that Crowley needed to find someone to fill-in for Benz, a reasonable jury could also interpret the email as expressing disapproval over Benz taking this whole month as FMLA leave and suggesting that Crowley needed to plan for Benz's possible termination.

Second, although the layoffs were announced on September 30 and took place over the next several days, Benz was not one of the 100 employees laid off at the time.  A jury could easily find that these budget cuts were not the reason for Benz's termination in 2015 even though Crowley claimed that they were.

Third, there is the more specific timing of Benz's termination.  As noted, Benz's superiors discussed the prospect of terminating Benz on October 28, 2014 based on performance, allegedly deciding to delay her discharge until after Christmas.  Curiously, however, Benz's superiors, despite the alleged performance issues, did not terminate Benz after Christmas or even during January 2015.

Rather, when Benz's daughter's condition worsened in January 2015, Benz told Morales that she probably would need to take additional FMLA leave, as it appeared likely that her daughter would undergo chemotherapy because her

19

condition was not improving.[4]  Shortly after that conversation, on January 26, 2015—the very day that Benz began her week-long trip to visit her ailing daughter—Morales, King, and Diaz resurrected the termination discussion about when they would fire Benz.  From January 19 until January 26, 2014, Benz used her accrued vacation time to visit her ill daughter, who was receiving treatment in Houston at the M.D. Anderson Cancer Center.

On February 4, 2015, only a few days after Benz returned from a weeklong trip to care for her daughter, Benz formally requested FMLA leave to care for her daughter again from February 9 until March 10, 2015.  Just two days after making this request, and on the last business day before she was to take nearly a month of FMLA leave, Benz was fired.  Given this close timing as well as all of the other evidence outlined above, a reasonable jury could infer that the true reason for Benz's termination was her continuing need to take FMLA leave to care for her daughter and not budget cuts or performance issues.

That Benz attempted to withdraw her FMLA request on February 5 on the advice of Crowley Human Resources and instead to seek permission to use her accrued vacation time does not alter that conclusion.  As noted above, Morales

---

[4]We reject Crowley's claim that there is no evidence that Crowley had knowledge of Benz's need for more FMLA leave.  The district court denied Crowley's motion to strike Benz's affidavit in this regard.  Further, Diaz testified that the termination was her idea and admitted that she knew that Benz planned to take FMLA leave, but that she was "not sure when" she knew.

20

never responded to Benz's email asking to change the type of leave, and Benz's approved FMLA leave was never withdrawn.  Indeed, on February 14, 2015, over a week after she was terminated, Benz received an email containing her leave of absence packet and FMLA eligibility notice letter.  Moreover, Benz had recently advised Morales—who asked Benz "frequently, often on a weekly basis" about her need for FMLA leave—that she would have an ongoing need for future FMLA leave to care for her daughter during her chemotherapy.  A reasonable jury could interpret Benz's attempt to change her leave request not as an indication that she no longer needed FMLA leave, but rather as a strategic decision to use other leave first and preserve her FMLA leave for anticipated future trips to care for her daughter.

The foregoing evidence, when viewed in the light most favorable to Benz, creates a triable issue as to whether Crowley terminated Benz in retaliation for requesting FMLA leave.  Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011) (explaining that the plaintiff will always survive summary judgment if she presents "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker" (quotation and footnote omitted)).  Accordingly, the district court erred in granting summary judgment to Crowley on Benz's FMLA retaliation claim.

21

## IV.    BENZ'S FMLA INTERFERENCE CLAIM

Similarly, Benz has submitted enough evidence to present a triable issue as to whether Crowley unlawfully interfered with her right to take FMLA leave.

"[T]o state a claim that [her] employer has interfered with a substantive FMLA right, a plaintiff need only demonstrate that [she] was entitled to but denied the right." Strickland v. Water Works & Sewer Bd. of Birmingham, 239 F.3d 1199, 1208 (11th Cir. 2001). However, the plaintiff does not have to allege that her employer intended to deny the right, as the employer's motives are irrelevant. Id.

If the employer interfered with the plaintiff's FMLA rights, the employer can escape liability by showing that it would have terminated the employee for reasons unrelated to any FMLA leave. Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 n.1 (11th Cir. 2000) (explaining that an employer that interferes with employee's FMLA right "bears the burden of proving that the employee would have been laid off . . . for reasons unrelated to the [FMLA right]"). So, the plaintiff must ultimately show that the request for FMLA leave was the proximate cause of her termination. See Schaaf, 602 F.3d at 1242 (explaining that, for an employer to be held liable for FMLA interference, the request for leave must have been the proximate cause of the termination).

22

Here, Benz alleges that she was denied her right to take leave in order to care for her daughter who had a serious health condition, which is clearly a substantive right under the FMLA. 29 U.S.C. § 2612(a)(1)(C). That Crowley fired Benz before she could begin her FMLA leave does not foreclose Benz's FMLA interference claim. In Pereda v. Brookdale Senior Living Communities., Inc., the defendant-employer terminated the plaintiff-employee before she could take her requested maternity leave under the FMLA. 666 F.3d 1269, 1272 (11th Cir. 2012). This Court reversed the district court's dismissal of the plaintiff's FMLA interference claim, holding that a plaintiff can advance an FMLA interference claim even if she was terminated before taking her leave—so long as she would have been eligible to take FMLA leave when her leave was scheduled to begin.[5] Id. at 1273-75.

Thus, what matters for Benz's FMLA interference claim is why she was terminated, not when she was terminated. See Krutzig, 602 F.3d at 1236 (explaining that an employer can terminate an employee before she takes FMLA leave without violating her FMLA right to commence so long as "the employee would have been dismissed regardless of any request for FMLA leave"). In other words, the crux of the issue is whether Crowley terminated Benz for reasons unrelated to her request for FMLA leave. Because we conclude that Benz has

---

[5]Neither party disputes that Benz was eligible to take FMLA leave in February 2015.

23

presented a triable issue as to whether Crowley fired her in retaliation for her request for FMLA leave, we likewise conclude that there is a triable issue as to whether Benz's FMLA leave was the proximate cause of her termination, or whether Crowley would have terminated Benz for reasons unrelated to her request for FMLA leave. To put it simply, we cannot tell why Crowley terminated Benz and deem it appropriate for a jury to resolve this factual dispute.

Thus, as with Benz's FMLA retaliation claim, the district court erred when it granted summary judgment to Crowley on Benz's FMLA interference claim.

## V.    BENZ'S AGE AND GENDER DISCRIMINATION CLAIMS

Turning to Benz's claims for age and gender discrimination, we agree with the district court that Benz has adduced no evidence that Crowley fired her as a result of age or gender bias. Thus, even assuming arguendo that Benz could make out prima facie cases as to gender and age discrimination, she has failed to show that Crowley's proffered reason for terminating her was a pretext for unlawful discrimination based on age or gender. Unlike her FMLA retaliation and interference claims, Benz lacks circumstantial evidence that could create a triable issue of fact as to whether she was terminated as a result of age or gender bias.

## VI.    CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment to Crowley, except as to Benz's FMLA retaliation and

24

interference claims.  As to these claims, we reverse the district court's order and remand the case for further proceedings consistent with this opinion.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**